IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MERCURY ASSOCIATES, INC., | )<br>)<br>) |
| PLAINTIFF, | )<br>) |
| vs. | ) Case No. 3:23-CV-280<br>) |
| PRIMORIS SERVICES CORPORATION, | ) JURY TRIAL DEMANDED<br>)<br>) |
| DEFENDANT. | )<br>) |

## COMPLAINT

Plaintiff Mercury Associates, Inc. ("Mercury") states the following claims for relief against Defendant Primoris Services Corporation ("PSC").

### SUMMARY OF THE ACTION

1. Mercury configured and delivered to PSC a state-of-the-art fleet management information system featuring FleetWave® software, which Mercury licensed from Chevin, on behalf of PSC, to be incorporated into PSC's system. PSC and Mercury collaborated on the configuration of the system to ensure all aspects met PSC's specifications. PSC then hired a new fleet program manager who was unfamiliar with FleetWave® or PSC's legacy policies and procedures for which the system was configured. Thereafter, even though the agreement at issue does not permit terminations "for convenience," PSC attempted to terminate its relationship with Mercury for convenience and use different fleet software—presumably at the urging of its new program manager. Because Mercury remains obligated to Chevin, the provider of FleetWave®, among other reasons, Mercury could not agree to PSC's desired termination. With buyer's remorse fully set in, PSC then purported to terminate "for cause" based on pretextual and false assertions of "material breach" and stopped paying Mercury's invoices. Mercury fully performed its obligations, and PSC is liable for breach of contract.

## PARTIES, JURISDICTION, AND VENUE

2. Mercury is a Maryland corporation that maintains its corporate headquarters and principal place of business in Maryland; for purposes of diversity jurisdiction, Mercury is deemed a citizen of Maryland.

3. PSC is a Delaware corporation that maintains its corporate headquarters and principal place of business in Dallas, Texas; for purposes of diversity jurisdiction, PSC is deemed a citizen of Delaware and Texas. PSC may be served with a copy of this complaint and the citation via its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, *at* 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this civil action is between citizens of different states (Maryland, on the one hand, and Delaware and Texas, on the other hand) and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. As a Dallas-headquartered company, PSC is subject to the Court's personal jurisdiction.

6. Venue is proper under 28 U.S.C. § 1391 because PSC is deemed a resident of this district and a substantial part of the events and omissions giving rise to the claims occurred in this district.

## THE CONSULTANT, THE CONTRACTOR, AND THEIR AGREEMENT

7. Mercury is a consultant providing fleet management services to companies of all sizes across all sectors.

8. Among other things, Mercury provides its clients with fully customized fleet management information solutions, including acquisition and deployment of asset information systems and project management and system administration services.

9. PSC is a contractor providing construction and infrastructure services to what it calls "well-tenured" and "blue-chip" clients.

10. PSC owns and/or leases a fleet of more than 17,000 vehicles and construction equipment and/or components.

11. To maintain and operate its fleet, PSC has more than 240 employees in its fleet organization and does business with more than 1,700 parts vendors and more than 26,000 fuel and service locations.

12. On March 23, 2021, the parties entered into a Software-as-a-Service Subscription Service Level Agreement (the "SLA") pursuant to which Mercury agreed to acquire, implement, and support a FleetWave® fleet management information system ("FMIS") for PSC as a Software-as-a-Service ("SaaS")[1] subscription for an initial term of three years.

13. A copy of the SLA is attached as **Exhibit A**.

14. Mercury's obligations under the SLA include software implementation, ongoing system administration, end-user support, and data aggregation, analysis, and reporting services.

15. Under the SLA, PSC agreed to pay Mercury monthly subscription fees of $49,958 in addition to an initial implementation fee.

---

[1] SaaS providers manage complex software and hardware for clients, who receive on-demand access to provider-hosted applications without incurring the costs of acquisition, implementation, infrastructure setup and maintenance, user support, and security.

16. Under the SLA, PSC also agreed to pay for out-of-scope and/or non-routine system administration and/or application support tasks on a time and materials basis.

17. The SLA provides that PSC must pay all invoices within thirty days.

18. At PSC's request, Mercury extended the payment terms on its monthly invoices to 60 days.

19. Additionally, the SLA contains a "cooperation" clause requiring PSC (the "Client" in the SLA) to provide Mercury (the "Contractor" in the SLA) with essential data, information, and assistance:

> **6.2 COOPERATION** - Client acknowledges (i) that certain Services provided by Contractor may be dependent on Client providing certain data, information, or assistance, and (ii) that certain Services may be performed at a Client Location, which Services may be dependent on Client providing access to Client's facilities and suitable workspace (collectively, "Cooperation"), and (iii) that such Cooperation may be essential to the performance of Services provided by the Contractor. The parties agree that any delay or failure by the Contractor to provide Services hereunder which is caused by Client's failure to provide timely Cooperation reasonably requested by the Contractor shall not be deemed to be a breach of the Contractor's performance obligations under this SLA.

20. Before the initial term expires in March 2024, the SLA may only be terminated by party insolvency or following an uncured material breach—the SLA does not allow termination for convenience.

## MERCURY PERFORMS ITS OBLIGATIONS

21. Mercury's initial implementation of the FMIS for PSC was complete by April 2021.

22. PSC gained access to the FMIS in August 2021.

23. From its data center in Houston, Texas, Mercury provided data aggregation services that imported and processed telematics system meter readings, automatically processed

maintenance transactions (~6,000 records) and fuel records (~163,000 records) from third-party vendor accounts, and provided asset synchronization utilities with PSC's ViewPoint ERP system.

**PSC HIRES A NEW FLEET PROGRAM MANAGER AND GETS BUYER'S REMORSE**

24.     Throughout the Spring and Summer of 2022 Mercury continued as PSC's contracted consultant pursuant to the SLA.

25.     In May 2022, PSC hired a new fleet program manager.

26.     Upon information and belief, PSC's new fleet program manager is either relatively inexperienced with FleetWave® or has a preference for other fleet management software, as he had worked with different fleet management software at his most recent prior position.

27.     As PSC's new fleet program manager became more involved with the FMIS, Mercury provided additional support to assist him in flattening his learning curve and enabling him to get the most out of the FMIS that Mercury developed for PSC.

28.     However, it became clear over time that the new fleet program manager simply preferred to use different software.

**PSC ATTEMPTS TO TERMINATE THE AGREEMENT FOR CONVENIENCE**

29.     On an August 15, 2022 Zoom videoconference, PSC informed Mercury that PSC had determined it would be better served by a system other than FleetWave® and had elected to move that direction.

30.     During the same videoconference, PSC affirmed that Mercury had done nothing wrong, but that PSC wished to terminate the SLA for convenience.

31.     By email sent shortly thereafter on August 15, 2022, PSC asked Mercury to cancel their weekly status meetings and put all work on hold.

32. By email sent on August 16, 2022, PSC acknowledged that Mercury would need time to review its obligations to Chevin, the provider of FleetWave®, in order to respond to PSC's request to terminate the SLA for convenience.

33. By email sent on August 26, 2022, Mercury told PSC that it was still having discussions with Chevin, the provider of FleetWave®, and hoped to have more information soon.

34. In the same email, Mercury noted that PSC had made that clear that its decision to move to a different fleet management system was only a matter of preference and that Mercury had performed its contractual obligations.

35. In an email reply dated August 30, 2022, PSC attached a proposed "Agreement to Mutually Terminate SaaS Agreement for Convenience," which among other things provided that the SLA would be immediately terminated for the parties' "respective convenience" and was "without the fault of either Party."

36. A copy of PSC's proposed agreement to terminate the SLA for convenience is attached as **Exhibit B**.

37. In subsequent discussions, Mercury explained to PSC that the SLA does not have a termination-for-convenience provision and that Mercury remained obligated to Chevin, the provider of FleetWave®.

38. PSC incorrectly believed that Mercury's contract with the provider of FleetWave® could be terminated by Mercury for convenience.

39. While Mercury was willing to continue working through the impasse, it made clear to PSC that PSC's "walk away" proposal was not feasible, as Mercury would have continuing obligations to Chevin, the provider of FleetWave®. Mercury had engaged with Chevin for

6

continuing services in reliance on the SLA and its terms, including the monthly subscription fees of $49,958, which would be used by Mercury, in part, to pay Chevin.

## PSC ATTEMPTS TO TERMINATE THE AGREEMENT "FOR CAUSE"

40. Having unsuccessfully attempted to terminate the SLA "for convenience," PSC then speciously tried to invent a basis to terminate the SLA "for cause."

41. On October 4, 2022, by letter from its in-house counsel, PSC issued a notice of default asserting, for the first time, a fabricated assertion that Mercury was in material breach of the SLA and demanding a "refund" of $849,206.

42. A copy of PSC's notice of default is attached as **Exhibit C**.

43. The assertions of breach in PSC's notice of default are blatantly false and are mere pretext for PSC's stated intent to use a different fleet management system.

44. Mercury performed all required undertakings in the SLA to the extent permitted by PSC's cooperation.

45. Indeed, PSC did not claim any of the grievances in its notice of default until PSC realized that Mercury would not agree to terminate the SLA in exchange for nothing.

## PSC FAILS AND REFUSES TO PAY MERCURY'S INVOICES

46. Meanwhile, and without justification, PSC stopped paying its monthly subscription fees.

47. PSC has not paid Mercury's invoices dated September 15, 2022, October 15, 2022, or November 15, 2022, each of which is past due.

48. PSC has also not paid Mercury's invoices dated December 15, 2022, or January 15, 2023.

49. Copies of the unpaid invoices are attached as **Exhibit D**.

## PSC'S REPUDIATION OF THE AGREEMENT

50. By letter dated November 21, 2022, PSC purported to terminate the SLA based on "uncured defaults."

51. A copy of PSC's notice of termination is attached as **Exhibit E**.

52. PSC's conduct, including but not limited to PSC's November 21, 2022 letter, constitute an express repudiation of the SLA in that PSC manifested an unconditional intention to abandon, renounce, and refuse to perform the contract.

53. PSC's actions have caused Mercury considerable damages, for which Mercury now sues PSC.

## COUNT I – BREACH OF CONTRACT (UNPAID INVOICES)

54. Mercury incorporates by reference paragraphs 1 through 53 as if set forth verbatim herein in this Count I.

55. The SLA is a valid and enforceable contract.

56. Mercury performed its obligations under the SLA.

57. PSC has refused to pay Mercury's invoices, which is a material breach of the SLA.

58. Mercury has been damaged by PSC's refusal to pay Mercury's invoices.

## COUNT II – BREACH OF CONTRACT (REPUDIATION)

59. Mercury incorporates by reference paragraphs 1 through 53 as if set forth verbatim herein in this Count II.

60. The SLA is a valid and enforceable contract.

61. Mercury performed its obligations under the SLA.

62. PSC repudiated the SLA without justification, which is a material breach of the SLA.

63. Mercury has been damaged by PSC's repudiation of the SLA.

## DEMAND FOR RELIEF AND JURY TRIAL

64. PSC owes Mercury a total of $949,202 in monthly subscription fees for the period September 2022 through March 2024.

65. Additionally, Mercury has been, and will continue to be, forced to incur substantial attorney fees to protect its interests and enforce its rights. Mercury seeks, and is entitled to recover its reasonable and necessary attorney fees and costs from PSC, pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § 38.001 *et seq.*, for which it now sues. Mercury has retained the undersigned counsel and agreed to pay its reasonable and necessary attorney fees.

66. A copy of a letter from Mercury's undersigned counsel to PSC presenting this claim under Section 38.002(2) of the TEXAS CIVIL PRACTICE & REMEDIES CODE is attached as **Exhibit F**.

67. Mercury is entitled to prejudgment interest at a rate of 7% per annum.

68. Mercury is entitled to post-judgment interest in accordance with Section 304.003 of the TEXAS FINANCE CODE.

69. Mercury demands a jury trial on all issues so triable.

\* \* \* \*

WHEREFORE Plaintiff Mercury Associates, Inc., respectfully requests that the Court enter judgment in its favor and against Defendant Primoris Services Corporation, awarding all damages, fees, interests, and taxable costs to which it is entitled and granting all other and further relief that is just and proper.

Dated this 8th day of February, 2023.

By: /s/ Jonathan R. Shulan
Jonathan R. Shulan
Texas State Bar No. 24083842
jshulan@atllp.com
Jeffrey L. Schultz
*Pro Hac Vice* motion forthcoming
jschultz@atllp.com
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
314.621.5070 | 314.621.5065 FAX

Charles M. Gearing
Texas State Bar No. 24069774
cgearing@weaverjohnston.com
WEAVER JOHNSTON & NELSON, PLLC
12404 Park Central Drive, Suite 225-S
Dallas, Texas 75251
832.998.3757 | 214.217.4184 FAX

ATTORNEYS FOR PLAINTIFF MERCURY ASSOCIATES, INC.